IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA

    Plaintiff,

v.

NICHOLAS J. ANDERSON,

    Defendant.

REVIEW OF
CONDITIONAL RELEASE

13-cr-96-wmc

---

A hearing was held for consideration of the status of Nicholas Anderson's conditional release on March 19, 2019. The government appeared by Assistant U.S. Attorney Laura Przybylinski Finn. Mr. Anderson was present in person and with defense counsel Payal Khandhar. Also present was Senior U.S. Probation Officer Traci L. Jacobs.

## FACTS

From the record, the court makes the following findings of fact. On July 17, 2013, Nicholas J. Anderson was indicted on two counts of knowingly and willfully making a threat to take the life of the President of the United States and one count of transmitting threats to kill President Obama's wife and children. On December 30, 2014, he was found not guilty on all three counts by reason of insanity and civilly committed to the custody of the Attorney General for evaluation pursuant to 18 U.S.C. § 4243(f).

On May 16, 2016, the Bureau of Prisons (BOP) filed an Annual Risk Assessment Report in which mental health staff opined that Anderson "no longer suffers from a mental disease or defect such that his conditional release would create a substantial risk of bodily injury to another person or serious damage to the property of another." Accordingly, Anderson was conditionally released from his placement at the Federal Medical Center in Rochester,

1

Minnesota, on June 3, 2016, subject to 16 conditions of supervision to be monitored by the U.S. Probation Office. In July 2016, Anderson further transitioned to the community through a group home placement at Northwest Transitions in New Richmond, Wisconsin. By April 1, 2017, he had transitioned to living independently in a subsidized apartment in Baldwin, Wisconsin, and was: employed part-time as a cashier; prescribed Depakote to manage the delusional behaviors associated with his diagnosis; and directed to participate in mental health, substance abuse, and cognitive-based counseling.

Anderson performed reasonably well for the next six months, but in September 2017, he submitted an unsupervised urine specimen that tested positive for marijuana. Even before completing that drug test, Anderson admitted use of marijuana for a one-week period to "boost his ego." Anderson also admitted to purchasing alcohol, ostensibly to help him stop using marijuana. He further acknowledged purchasing synthetic urine to hide his marijuana use, although to his credit, Anderson did not ultimately use the synthetic urine hidden in his bathroom, despite his test being unsupervised.

On January 29, 2018, an annual report was submitted to this court by the Probation Office, which detailed Anderson's adjustment to supervision and recommended his continued supervised release. However, Anderson continued to test positive for marijuana in 2018. Specifically, on January 30, June 3, August 14, and November 14, 2018, his urine samples were all positive despite ongoing participation in substance abuse treatment through St. Croix Health and Human Services in New Richmond and self-reported attendance at Alcoholic Anonymous meetings.

On October 25, Anderson was also found in possession of an internet-capable cellular phone without advance approval from his probation officer to possess that phone. Only then did he report that his employer provided him with the phone when he was hired as a co-

manager, so that he could log-in to the scheduling program remotely and communicate with employees regarding their schedules. Again to his credit, a cursory examination of the phone confirmed that a majority of the phone's history appeared to be employment-related; however, there were some personal text messages, and Facebook and Facebook Messenger applications had been activated on the phone. Subsequently, the probation officer deleted those social network applications.

In response to these violations, the court held a video status conference on December 4, 2018. During that hearing, his treating psychiatrist, Dr. Platz, discussed by phone his concern that Anderson's marijuana use could increase or exacerbate delusions associated with his diagnosis. In response, Anderson assured this court that he was willing to participate in counseling and that sobriety was important to him. The court also stressed the importance of sobriety and the potential outcomes if he continued to smoke marijuana, including possible institutionalization.

Unfortunately, following the telephonic status hearing, Anderson advised his probation officer that he was no longer interested in continuing with mental health counseling services through St. Croix County Health and Human Services in New Richmond. Instead, he was interested in seeking mental health services through an alternative provider. On January 7, Anderson called his probation officer and claimed that his mother, Ronda Jacobson, was having an affair, mirroring statements he made in 2014 just before the revocation of his pretrial diversion agreement. On January 8, Anderson also sent a disturbing text message from his computer, continuing a similar fixation on his mother's sexual relationships. There were also two text messages from Brian McConnell that alluded to his use of marijuana with Anderson. Finally, Anderson used the search term "Melania Trump" on January 3, and he used the search term "Donald Trump" on January 4, 2019.

3

On January 8, the probation office conducted a follow-up search of the Anderson's apartment. Marijuana, drug paraphernalia, and two external hard drives were confiscated during the search, and Anderson's behavior vacillated between loudly crying without tears to complete calm. He further admitted to the probation officer that: he had been smoking marijuana daily to alleviate suicidal ideation; marijuana made him feel happy; and marijuana gave him a reason to live. Nevertheless, Anderson acknowledged that he had not reached out to his psychiatrist, his psychologist, his AODA counselor, his sponsor, or the probation officer to ask for help with any suicidal ideation, desire to smoke marijuana, use of marijuana, or possession of marijuana. Anderson's service providers were notified of his suicidal ideation. Dr. Platz subsequently discussed adding an antipsychotic drug to Anderson's medication management plan, but he was resistant to any change, and Dr. Platz was concerned that if he forced a medication change, it would be more detrimental to Anderson's emotional stability.

Since then, Anderson's conduct only appears to have escalated. On January 10, he met with his psychologist, Meredith Stevens, who reported that he was very emotional at times, denied current suicidal ideation, became upset when a group home placement was suggested, expressed that he was tired of being in "the system," and felt that "the system" treated him like a child. On January 13, Anderson made an unannounced stop at his mother's home and spoke to her husband, Dale Jacobson, brought up his mother's alleged affair and told Jacobson that his entire treatment team was meeting next week to confront his mother. On January 17, representatives from all of Anderson's treatment providers met with the probation officer and Anderson to discuss a treatment plan to address his continued use of marijuana and his statements regarding suicidal ideation. Anderson was told that St. Croix County Health and Human Services would increase his level of services, returning him to their Community Support Program in order to provide more structured support to meet his treatment needs, but

4

Anderson said that it was not necessary to increase his level of services because he is an addict and relapse is part of addiction.

On January 23, Anderson again admitted that he used marijuana and also admitted that he had been associating with a drug user. Anderson acknowledged that he cannot continue to associate with drug users if he wants to remain sober. Nevertheless, on February 14, Anderson admitted that he used marijuana on February 9 and had continued his ongoing association with the same drug user. Anderson also turned down inpatient treatment, stating that treatment would be excessive for marijuana use. On February 21, Anderson called the probation office to report that he wanted a new mental health therapist. In a follow up call, the therapist reported Anderson's demeanor during their last appointment was calm until she pointed out that he had not implemented any aspect of his recovery plan since they last met on February 5.

On February 25, the probation officer spoke to a sheriff's deputy with the St. Croix County Sheriff's Department in Hudson, Wisconsin, who reported that Anderson had called to report his mother's alleged affair. Anderson also attempted to file a similar report with the Baldwin, Wisconsin Police Department. The officer recalled that Anderson's speech and mannerisms were slow, indicating that he may have been under the influence of a controlled substance.

On February 26, Anderson's substance abuse counselor relayed Anderson's further report of additional drug use. Anderson also told the counselor that he was finished with all services through St. Croix County Health and Human Services except medication management with Dr. Platz, although he lacked any authorization to self-terminate treatment.

During supervision, Anderson has cooperated with psychiatric medication management with Dr. Platz, but Depakote test result levels have been 41, 44, and 48 -- all below 50, the

bottom of the therapeutic range for his dosage at the time of the blood testing. In contrast, while incarcerated at the Federal Medical Center in Rochester, Minnesota, his Depakote level tested at 60 even though his prescribed dosage was lower.

On February 28, 2019, the U.S. Probation Office filed a memorandum notifying the court of Anderson's alleged violations of his terms of conditional release under 18 U.S.C. § 4243(g). An arrest warrant was issued that day, and Anderson was arrested on March 4, 2019. Specifically, he failed to comply with Condition No. 3, requiring his active participation in a regimen of outpatient mental health care through the St. Croix County, Wisconsin, Human Services as instructed by the supervising probation officer. He also failed to comply with Condition No. 4, requiring that he take medication as prescribed by his treatment provider by declining the addition of an antipsychotic medication to his prescribed treatment regimen. Further, Anderson's blood test result levels suggest a failure to take Depakote at prescribed levels. At the same time, Anderson failed to comply with Condition No. 6, requiring that he abstain from the use or possession of alcohol or illegal drugs and not associate with illegal drug users or sellers. Anderson next failed to comply with Condition No. 9, prohibiting that he own, possess, or operate any device that provides or allows access to the internet unless he obtains pre-approval from the supervising probation officer, having possessed an internet-capable cellular phone and accessing social media without approval from the probation office. Finally, Anderson failed to comply with Condition No. 11, requiring that he not commit a federal, state, or local crime by possessing marijuana and drug paraphernalia.

## CONCLUSIONS

Anderson has stipulated to the alleged violations of both his mental health conditions and the ancillary conditions of conditional release related to his ongoing substance abuse and

addiction. Although the government has offered clear and convincing evidence that Anderson's alleged violations represent a danger, at least to the property of another, should he continue to cycle downward, it is uncertain at this point whether renewed institutionalization or inpatient treatment is appropriate. Accordingly, in light of his failure to comply with the prescribed regimen of mental health care and treatment, I find that Anderson should be returned for further examination before a fully informed decision can be made as to revocation of Anderson's conditional release under 18 U.S.C. § 4243(g).

ORDER

IT IS ORDERED THAT defendant Nicholas J. Anderson shall be housed by the Federal Bureau of Prisons (BOP) at the Federal Medical Center in Rochester, Minnesota (FMC Rochester), until a final order in this matter issues. To facilitate the final revocation hearing and findings required to be made under 18 U.S.C. § 4246(f), BOP shall there conduct an examination of Anderson pursuant to 18 U.S.C. § 4247(b) within 45 days of his arrival at FMC Rochester and recommend further institutionalization, inpatient treatment, or other programming. Absent a stipulated disposition regarding the alleged violations of conditional release by all parties, a final revocation hearing will be scheduled following receipt of that report.

Entered this 19th day of March, 2019.

BY THE COURT:

_____
WILLIAM M. CONLEY
U.S. District Judge